ARTHUR J. ROCQUE, JR., COMMISSIONER OF
ENVIRONMENTAL PROTECTION *v.* DEMILO
AND COMPANY, INC., ET AL.
(AC 23948)

Dranginis, Flynn and McLachlan, Js.

Argued June 8—officially released October 12, 2004

*Nathalie Feola-Guerrieri*, with whom, on the brief, was *Daniel Shepro*, for the appellants (named defendant et al.).

*Matthew I. Levine*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Kimberly P. Massicotte* and *Mary K. Lene-*

*han*, assistant attorneys general, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. This is an appeal challenging four interlocutory orders entered by the trial court on motions filed by the plaintiff, Arthur J. Rocque, Jr., the commissioner of environmental protection. The defendants Philip Joseph DeMilo and DeMilo & Company, Inc., appeal from the court's granting of the plaintiff's (1) motion to substitute a party after the death of defendant Frank DeMilo, (2) motion to withdraw claims against Frank DeMilo, (3) motion to dismiss the defendants' counterclaim and (4) motion for permission to withdraw counts one through nine of the amended complaint.[1] We dismiss the appeal in part and affirm the judgment of the trial court in part.

The defendants are the owners of property located at 36 Leibert Road in Hartford, where they operate a vehicle salvage business. On June 5, 2001, the plaintiff brought an action against the defendants for temporary and permanent injunctive relief and civil damages related to the alleged discharge of engine oil, fuel, coolant, brake fluid and transmission fluid into the soil and water on the property. On July 13, 2001, the plaintiff filed a twelve count amended complaint alleging, in counts one through nine, violations of various environmental statutes and, in count ten, that the defendants failed to comply with an administrative order issued by the plaintiff requiring them to remedy their noncompliance with environmental statutes. Counts eleven and twelve sought an injunction and penalties for violations

---

[1] We note that because we dispose of issues one, two and four on alternate procedural grounds, we do not consider whether these orders qualify as appealable interlocutory orders under Practice Book §§ 61-3 and 61-4. Because the trial court's granting of a motion to dismiss an entire counterclaim is final for appeal purposes; see Practice Book § 61-2; we will address the third claim on its merits.

of a general permit for the discharge of storm water associated with industrial activity.

The defendants filed an answer, special defense and a two count counterclaim. The first count of the counterclaim alleged that the department of transportation acquired by eminent domain the right to remove a gas station building, gasoline pipes and tanks at the defendants' facility, but failed to do so. The defendants further claimed that the state had inversely taken the station, pipes and tanks and deprived the defendants of the use and enjoyment of the real estate upon which the gas station is located. The second count of the counterclaim alleged that, in 1985, the department of transportation acquired by eminent domain certain property rights in the defendants' facility. It further alleged that a contractor employed by the state improperly removed vehicles from the areas encompassed within the taking, causing a spillage of gasoline and other substances on the part of the property still owned by the defendants. The defendants' special defense was based on the same alleged actions by the department of transportation, which the defendants argued caused the contamination at issue.

On September 13, 2001, the plaintiff filed a motion to strike the defendants' special defense and, on September 17, 2001, filed a motion to dismiss the defendants' counterclaim. The plaintiff moved to dismiss the counterclaim on the grounds that (1) the court lacked subject matter jurisdiction to entertain the second count of the counterclaim due to the doctrine of res judicata, (2) the court lacked subject matter jurisdiction to entertain the second count of the counterclaim due to the doctrine of sovereign immunity and (3) the causes of action set forth in the counterclaim did not arise out of the same cause of action as the plaintiff's claims and are, therefore, not the proper subject of a counterclaim. Following oral argument on the plaintiff's motions to

dismiss the counterclaim and to strike the special defense, the plaintiff filed a motion seeking the court's approval to withdraw counts one through nine of the amended complaint, leaving only the counts alleging the violations of the administrative order and the storm water general permit. The plaintiff represented that withdrawing those counts would streamline the issues of the case and enable the court to address the more important matter of the enforcement of the administrative order. The defendants objected to the withdrawal, arguing that the plaintiffs were seeking to withdraw counts one through nine to prevent the defendants from pursuing their counterclaim and special defense, which, they argued, were based on facts alleged in those counts.

On February 14, 2002, the court, *Hon. Robert Satter*, judge trial referee, ruled on all three of the aforementioned motions. The court granted the motion to strike the defendants' special defense, citing *Water Resources Commission* v. *Connecticut Sand & Stone Corp.*, 170 Conn. 27, 32–33, 364 A.2d 208 (1975). The court also granted the plaintiff's motion to withdraw counts one through nine of the amended complaint and permitted the plaintiff to file a second amended complaint. As to the motion to dismiss the counterclaim, the court determined that both counts of the counterclaim "are [properly] dismissible on the authority of *Carothers* v. *Connecticut Building Wrecking Co.*, 19 Conn. App. 216, 561 A.2d 971 (1989), in that their resolution would delay the speedy resolution of [the] plaintiff's action to remediate pollution, on the ground of sovereign immunity in that the defendants' counterclaim [does] not arise out of the same cause of action as plaintiff's action and on the ground of lack of in personam jurisdiction over the state department of transportation."[2]

---

[2] Although the word "probably" originally appeared in the order, the court, in a subsequent articulation issued on January 16, 2003, clarified that it should have read "properly."

In November, 2002, the defendants[3] filed a suggestion of death notice on behalf of Frank DeMilo, notifying the court that he died on May 26, 2002. The plaintiffs subsequently filed a motion to substitute the executor or administrator of the estate of Frank DeMilo as a defendant, pursuant to General Statutes § 52-599, requesting that, if no executor or administrator had been appointed for his estate, "counsel for the decedent petition the appropriate Probate Court to appoint such executor or administrator to be substituted in this action." The defendants objected to the motion to substitute, arguing that the remaining defendants are not obligated to secure the appointment of a fiduciary for the estate and that the plaintiff should itself move for appointment pursuant to General Statutes § 45a-303. On December 17, 2002, the court, *Hon. Robert J. Hale*, judge trial referee, overruled the defendants' objection and granted the motion to substitute, indicating that the defendants are "order[ed] to seek appointment if none [is] appointed."

On January 7, 2003, the defendants filed a pleading entitled "Suggestion of Stay of Proceedings," requesting that the action be stayed during the interval between the death of Frank DeMilo and the revival of the action by the appearance of an executor or administrator. The plaintiff objected to a stay of the proceedings, arguing that the action involves environmental violations and seeks immediate injunctive relief to remediate the conditions as well as civil penalties and that the delay of the action could have an adverse impact on the environment. The plaintiff requested that the stay be denied and that the defendants be ordered to substitute an executor or administrator within thirty days.[4]

---

[3] The defendants remaining after the death of Frank DeMilo were Philip DeMilo and DeMilo & Company. With respect to the time period after Frank DeMilo's death, we refer to Philip DeMilo and DeMilo & Company as the defendants.

[4] It does not appear that the court ruled on either the motion to stay or the defendants' objection thereto.

On January 29, 2003, the defendants appealed from the order granting the motion to dismiss their counterclaim and the order granting the plaintiff's motion to substitute.[5] On April 25, 2003, the plaintiff filed a motion to withdraw the action as to Frank DeMilo. On June 23, 2003, the court, *Beach, J.*, granted the motion to withdraw, noting that "[t]here apparently has been no objection to the motion to withdraw [the matter] as to Frank DeMilo who reportedly died over a year ago." On June 30, 2003, the defendants amended their appeal to also challenge the granting of the motion to withdraw as to Frank DeMilo.

On June 24, 2003, the plaintiff filed a motion to dismiss the appeal, arguing that (1) the issues on appeal concerning the substitution of Frank DeMilo's estate as a defendant in the case are moot, as the underlying action has been withdrawn as to Frank DeMilo and (2) the portion of the appeal challenging the granting of the motion to dismiss the defendants' counterclaim is untimely. We denied the motion to dismiss on July 23, 2003.

I

The defendants first claim that the court improperly granted the plaintiff's motion to withdraw the action as against Frank DeMilo. They argue that his death abated the action and deprived the court of jurisdiction to enter any orders prior to the appearance of a substituted party.[6] We decline to review this claim on the ground that we lack subject matter jurisdiction.

[5] Although the appeal form indicated that it was filed on behalf of DeMilo & Company and Frank DeMilo, the defendants filed a motion to correct the appeal form to indicate that Philip DeMilo, not Frank DeMilo, was appealing.

[6] Although the defendants' brief includes a section with a heading challenging the granting of the plaintiff's motion to withdraw as to Frank DeMilo, the body of the accompanying argument does not address this matter but claims error with the court's ruling on the plaintiff's motion to withdraw counts one through nine of the amended complaint. This section also incorporates by reference the portion of the brief challenging the court's granting of the motion to substitute a party. There is no legal analysis pertaining to

In its brief to this court, the plaintiff argues that this claim should be dismissed on the ground that the defendants are not aggrieved and that this court, therefore, lacks subject matter jurisdiction. "The question of aggrievement is essentially one of standing . . . . Because [t]he issue of standing implicates this court's subject matter jurisdiction, we address it first." (Citation omitted; internal quotation marks omitted.) *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 701, 780 A.2d 1 (2001).

"The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *In re Application for Pro Hac Vice Admission of Reich*, 83 Conn. App. 432, 437, 851 A.2d 308 (2004).

Although the defendants satisfy the first prong of this test by demonstrating a specific personal or legal interest in the decision, they are unable to satisfy the second prong. The defendants have failed to establish, or even coherently argue, that their specific interest

the motion to withdraw as to Frank DeMilo. We remind the defendants that, as the appellants, they are required to fully and adequately brief their arguments in their brief submitted to this court. See, e.g., *Legnos* v. *Legnos*, 70 Conn. App. 349, 350 n.1, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

was injuriously affected by the court's order permitting withdrawal of the action as to Frank DeMilo.

We accordingly conclude that the defendants are not aggrieved by the court's granting of the motion to withdraw as to Frank DeMilo. We therefore lack subject matter jurisdiction to review this claim.

II

The defendants next claim that the court improperly granted the plaintiff's motion to substitute a party defendant and ordered that the defendants open an estate on behalf of Frank DeMilo. We decline to review this claim because it is moot in light of the withdrawal of all claims against Frank DeMilo.

After receiving notice that Frank DeMilo died, the plaintiff moved, pursuant to § 52-599, to substitute the decedent's executor or administrator in place of the decedent. In his motion, the plaintiff stated that "[i]f no executor or administrator has been appointed, the plaintiff requests an order from the court that counsel for the decedent petition the appropriate Probate Court to appoint such executor or administrator to be substituted in this action." The defendants objected to the motion, arguing that, to the best knowledge of the surviving defendants, there was no fiduciary for the court to substitute and that the court lacked the statutory authority to order any remaining defendants to petition the Probate Court to appoint a fiduciary, as requested by the plaintiff. The defendants stated that § 45a-303 vests in the Probate Court the authority to appoint a suitable fiduciary and provides that any person can make an application for such appointment. They argued that the plaintiff has failed to seek appointment and that there is no statutory authority for the court to order the defendants to do so. The court granted the plaintiff's motion to substitute, indicating in its order that the

defendants are "order[ed] to seek appointment if none [is] appointed."

We begin by addressing the plaintiff's argument that any issue concerning the substitution of Frank DeMilo's estate is rendered moot as the underlying action has been withdrawn as to him, and there is no practical relief that can flow from consideration of this claim.

"An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Parrott* v. *Liquor Control Commission*, 44 Conn. App. 745, 746, 692 A.2d 845 (1997). In the present case, events have occurred since the filing of the appeal that preclude us from granting any practical relief if we addressed the merits of this claim. In part I, we decline to review the court's granting of the motion to withdraw all claims against Frank DeMilo. As no claims against Frank DeMilo exist, any issue regarding the propriety of the motion to substitute his estate is rendered moot.[7] We accordingly decline to review this claim.

### III

The defendants next claim that the court improperly dismissed their counterclaim. They argue specifically that (1) the death of Frank DeMilo abated the action and deprived the court of subject matter jurisdiction

---

[7] During the pendency of this appeal, the plaintiff filed a motion to dismiss the appeal on the same mootness grounds. That motion was denied. We note that the defendants were able to surmount this initial mootness challenge to their claim because they appealed from the withdrawal as to Frank DeMilo. At that preliminary stage of the appeal, it would have been possible for this court to order practical relief by vacating the court's withdrawal as to Frank DeMilo, thereby warranting consideration of the propriety of granting the motion to substitute.

to rule on the motion to dismiss and (2) even if the court had jurisdiction to rule on the motion, the court's reasons for granting it are without merit. We disagree.

We have often recognized that "[a] motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because such a determination involves a question of law, our review is plenary." (Citations omitted; internal quotation marks omitted.) *Goodyear* v. *Discala*, 269 Conn. 507, 511, 849 A.2d 791 (2004).

We begin with the argument implicating the court's subject matter jurisdiction. See *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 192, 676 A.2d 831 (1996). The defendants argue that Frank DeMilo's death abated the action and deprived the court of jurisdiction to enter any orders in the matter and that, therefore, the order granting the motion to dismiss is void.

The defendants, however, appear to overlook the fact that Frank DeMilo was one of three defendants in the action and that, after his death, the action continued as to his two codefendants. General Statutes § 52-600 provides: "If there are two or more plaintiffs or defendants in any action, one or more of whom die before final judgment, and the cause of action survives to or against the others, the action shall not abate by reason of the death. After the death is noted on the record, the action shall proceed." See also *King* v. *Malone*, 91 Conn. 342, 347–48, 99 A. 691 (1917). As the action continued against the remaining defendants, the court maintained authority to issue orders regarding pending motions that affected the remaining defendants, including the motion to dismiss the counterclaim. Pursuant to the express statutory authority of § 52-600, the death of Frank DeMilo did not stay the proceedings as to the remaining defendants, and the court, therefore, retained jurisdiction to rule on the motion to dismiss.

We now turn to the defendants' argument that the reasons the court provided for granting the motion to dismiss lacked merit. The court provided three independent grounds for dismissing the counterclaim. The court determined that (1) it lacked personal jurisdiction over the department of transportation, (2) the resolution of the counterclaim would delay the speedy resolution of the plaintiff's action to remediate pollution and (3) it lacked subject matter jurisdiction to consider the counterclaim due to the doctrine of sovereign immunity in that the counterclaim did not arise out of the same cause of action as the plaintiff's action. We need only find merit with one of those grounds to affirm the court's dismissal. We begin by addressing the court's reasoning that it lacked personal jurisdiction over the department of transportation.

The first count of the defendants' counterclaim alleges that the department of transportation acquired a right to remove the gas station building, pipes and tanks at the defendants' facility, but that the state never did so, thereby inversely taking those facilities and causing the defendants to suffer damages. The second count of the counterclaim alleges that, in 1983, the department of transportation acquired certain property rights in the defendants' premises by eminent domain, and that a contractor employed by the state, in removing vehicles from the area encompassed within that taking, caused a spillage of gasoline and other substances on the defendants' property. The defendants seek reimbursement for the cost of any expenses they will incur if required to remove soil in the area of the spill.

Both counts of the counterclaim are based on acts and omissions of the department of transportation, not acts and omissions of the plaintiff. Furthermore, the defendants seek damages from the department of transportation, not from the plaintiff.

Neither the rules of practice nor case law authorizes the defendants to assert a counterclaim against the plaintiff for the conduct of an entity that is not a party to the lawsuit. "In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . . A defendant may also file a counterclaim . . . against any other *party to the action* for the purpose of establishing that party's liability to the defendant for all or part of the plaintiff's claim against that defendant." (Emphasis added.) Practice Book § 10-10. "The jurisdiction of the trial court is limited to those parties expressly named in the action coming before it. . . . Until one is given notice of the actions or proceedings against him and is thereby given opportunity to appear and be heard, the court has no jurisdiction to proceed to judgment either for or against him even though it may have jurisdiction of the subject matter. . . . A court has no jurisdiction over persons who have not been made parties to the action before it." (Internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.,* 59 Conn. App. 224, 234–35, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000).

The defendants have not impleaded the department of transportation as a third party defendant as they could have pursuant to Practice Book § 10-11, nor have they sought the permission of the court to serve the department of transportation with a writ of summons and complaint. As the counterclaim pertains to an entity that is not a party to the action and over which the court did not have personal jurisdiction, the court properly granted the motion to dismiss.

Furthermore, the defendants have not demonstrated that the department of environmental protection and the department of transportation are in privity, which, if established, may obviate the need to implead separately the department of transportation. "Privity is not estab-

lished . . . from the mere fact that persons may happen to be interested in the same question or in proving or disproving the same facts. . . . While the concept of privity is difficult to define precisely, it has been held that a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." (Citation omitted; internal quotation marks omitted.) *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 22 n.6, 783 A.2d 1157 (2001). We must therefore examine whether the two agencies share a unity of interest. See *State* v. *Barlow*, 30 Conn. App. 36, 40, 618 A.2d 579 (1993).

In *State* v. *Fritz*, 204 Conn. 156, 173, 527 A.2d 1157 (1987), overruled in part on different grounds, 257 Conn. 769, 778 A.2d 947 (2001), our Supreme Court expressly rejected the notion that two state agencies, simply by virtue of their shared status as agents of the state, are necessarily in privity. The court, instead, examined whether two state agencies share a unity of interest by comparing their respective statutory mandates.[8] See id., 175–76.

Applying this analysis to the present case, we conclude that the two agencies do not share a unity of interest sufficient to establish privity. General Statutes § 22a-2 (a) provides in relevant part: "There shall be a Department of Environmental Protection which shall have jurisdiction over all matters relating to the preservation and protection of the air, water and other natural resources of the state." In contrast, General Statutes § 13b-3 provides that the department of transportation "shall be responsible for all aspects of the planning, development, maintenance and improvement of transportation in the state." These departments, although both state agencies under the aegis of the executive

[8] Even though *Fritz* and *Barlow* considered the issue of privity between two state agencies in the context of a res judicata or collateral estoppel claim, it is appropriate to apply the same analysis to the present case.

branch, clearly possess different interests and protect and enforce different legal rights.

The defendants have failed to establish either that the two agencies are in privity with one another, or that they have followed the appropriate procedure for impleading the department of transportation into the existing action.[9] We accordingly conclude that the court properly dismissed the counterclaim on the ground that it lacked personal jurisdiction over the department of transportation.

IV

Lastly, the defendants claim that the court improperly granted the plaintiff's motion to withdraw counts one through nine of the amended complaint. Because it's not properly before us, we decline to review this claim.

Our review of the record and court file reveals that the defendants never filed an appeal from the court's order granting the plaintiff's motion to withdraw counts one through nine of the amended complaint. The court file contains several appeal forms. The original appeal form, filed on January 29, 2003, indicates that the defendants appealed from (1) the court's December 19, 2002 order overruling the defendants' objection to a motion to substitute a defendant and (2) the court's January 16, 2003 order granting the plaintiff's motion to dismiss the counterclaim. There is no mention whatsoever of the court's February 14, 2002 order granting the plaintiff's motion to withdraw counts one through nine.

A corrected amended appeal form, filed on May 7, 2003, corrects a typographical error in the original

---

[9] We note also that the defendants themselves contested the existence of privity between the parties in order to defeat the plaintiff's assertion that the counterclaim was barred by the doctrine of res judicata or collateral estoppel by virtue of an earlier action in which similar claims were raised against the department of transportation.

appeal. The most recent amended appeal form, filed on June 30, 2003, indicates that the defendants also appeal from the court's June 23, 2003 order granting the plaintiff's motion to withdraw as to Frank DeMilo. Again, there is no indication that the defendants sought to appeal from the court's February 14, 2002 order granting the motion to withdraw counts one through nine.

It is axiomatic that unless the jurisdiction of this court is properly invoked, we cannot exercise our appellate jurisdiction. If the defendants desired appellate review of the court's order granting the motion to withdraw, they should have filed an appeal form indicating such intention or amended the existing form. See Practice Book §§ 61-1 through 61-9. "The right to appeal is not a constitutional one. It is but a statutory privilege available to one who strictly complies with the statutes and rules on which the privilege is granted." (Internal quotation marks omitted.) *Brown* v. *Brown,* 190 Conn. 345, 350, 460 A.2d 1287 (1983).

In accordance with our policy not to exalt form over substance, we have been reluctant to dismiss appeals for technical deficiencies in an appellant's appeal form. See *State* v. *Findlay,* 198 Conn. 328, 329 n.2, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986) (disregarding error on appeal form mistakenly indicating that appeal was being taken from jury verdict rather than judgment, concluding that defect in form is not jurisdictional in nature); see also *Brown* v. *Rosen,* 36 Conn. App. 206, 210, 650 A.2d 568 (1994) (disregarding appellant's failure to indicate on appeal form that appeal was being taken from final judgment). We are confronted in the present case, however, with a defect of substantive dimension that implicates this court's jurisdiction to entertain the claim.

Because the defendants failed to invoke the jurisdiction of this court properly, we will not consider their

claim concerning the motion to withdraw counts one through nine of the complaint.[10]

The appeal is dismissed as to the defendants' first, second and fourth claims, and the judgment is affirmed as to the defendants' third claim.

In this opinion the other judges concurred.

[10] We note also that this claim was not raised in the defendants' preliminary statement of issues, but appears for the first time in their appellate brief.